# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:18-CV-00534-KDB-DSC

| | |
|---|---|
| ERNEST KING, | )<br>)<br>) |
|     Plaintiff, | )<br>) |
| v. | )    **ORDER**<br>) |
| AMAZON CORPORATION<br>REGINA THOMAS, | )<br>)<br>) |
|     Defendant. | )<br>)<br>) |

**THIS MATTER** is before the Court on Defendant Amazon.com, Inc.'s ("Amazon") Motion for Summary Judgment. (Doc. No. 50) ("Motion"). Plaintiff Ernest King ("King") has not responded to Amazon's Motion, and the time for doing so has expired. The Court has carefully reviewed the Motion and considered the parties' briefs and exhibits. For the reasons discussed in Amazon's Motion and discussed briefly below, the Court **GRANTS** the Motion and enters Summary Judgment in favor of Amazon.

## I. RELEVANT BACKGROUND

This is a copyright infringement dispute concerning the publication of Plaintiff's book, *From Brooklyn to the Grave*, through Amazon's self-publishing service. The undisputed facts are as follows: Plaintiff authored *From Brooklyn to the Grave* while he was incarcerated in a North Carolina Correctional Facility. He obtained the help of Regina Thomas ("Thomas"), his former girlfriend, in the editing process and to assist him in finding a publisher. Thomas used Amazon's self-publishing service, "CreateSpace,"[1] to publish Plaintiff's book.

---

[1] CreateSpace has since merged with Kindle Direct Publishing. (Doc. No. 50, at 5 n.1).

1

At some point, Plaintiff and Thomas had a falling out. Plaintiff asserts that Thomas "separated herself from Plaintiff King disappearing with his book manuscript and shortly thereafter begain [sic] to reap the benefits of [sales]." (Doc. No. 1, at ¶ 7). As for Plaintiff's claims against Amazon, Plaintiff alleges that he never gave Amazon permission to sell his book and by doing so, Amazon is violating his copyright.

Plaintiff filed a *pro se* complaint against Defendants Amazon and Regina Thomas on October 2, 2018. In it he alleged (1) property flipping, (2) false documentation, (3) amount in controversy, and (4) prayer for relief. (Doc. No. 1). Amazon filed a motion to dismiss for failure to state a claim on December 4, 2018. (Doc. No. 19). Liberally construing Plaintiff's complaint, the court interpreted "property flipping" and "false documentation" as a cause of action for fraud, but then dismissed Plaintiff's fraud claim for lack of particularity. (Doc. 47, at 3-4). Also dismissed were Plaintiff's "amount in controversy" and "prayer for relief" claims. *Id.* at 5. The Court did find that Plaintiff asserted a copyright infringement claim by stating that "Defendants violated his federally-registered copyrights." *Id.* at 4. The Court did not dismiss Plaintiff's copyright infringement claim, but expressly noted that "Defendant Amazon may reassert any applicable arguments regarding this claim at summary judgment." *Id.*

Amazon filed a Motion for Summary Judgment on July 1, 2019. (Doc. No. 50) ("MSJ"). Plaintiff failed to timely respond to the MSJ. On August 5, 2019, this Court issued a Roseboro Order advising Plaintiff that a response was due within twenty-one days from the filing of the Court's order. (Doc. No. 52). On September 10, 2019, Plaintiff filed a Motion to Compel Discovery from Defendants Amazon and Thomas but did not answer Amazon's MSJ. (Doc. No. 55). On September 18, 2019, this Court granted in part Plaintiff's Motion to Compel Discovery and further extended Plaintiff's time to respond to Amazon's MSJ. (Doc. No. 56). Defendants

Amazon and Thomas responded to the Court's order on September 23, 2019 and September 26, 2019, respectively. (Doc. Nos. 57, 58, 59). On September 27, 2019, the Court issued a Supplemental Scheduling Order requiring Plaintiff to respond to the MSJ on or before October 28, 2019. (Doc. No. 60). Plaintiff was warned that if he failed to respond in that time, the Court would proceed to consider the MSJ in the absence of a response. (Doc. No. 60). On the day his response was due, Plaintiff filed a Motion for Extension of Time to File Response to the MSJ. (Doc. No. 62). Defendant Amazon consented to the extension of time, and the Court granted Plaintiff's motion, ordering him to file a response to the MSJ within twenty-one days of the order. (Doc. No. 64). The twenty-one-day deadline has come and gone, and Plaintiff has yet to file a response to the MSJ. As the Court warned Plaintiff multiple times, the Court will proceed to consider Amazon's motion without a response by Plaintiff.

## II. LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003).

3

"The burden on the moving party may be discharged by 'showing'. . . an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249–50.

The question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

### III. DISCUSSION

To establish a claim for copyright infringement under 17 U.S.C. § 101 *et seq.*, a plaintiff must prove that he possesses a valid copyright and that the defendant violated one of his exclusive rights under the Copyright Act. *Copeland v. Bieber*, 789 F.3d 484, 488 (4th Cir. 2015). The Act lists five exclusive rights. 17 U.S.C. § 106. Relevant to this action are the exclusive rights of the owner to reproduce the copyrighted work and to distribute copies of the copyrighted work to the public by sale or other transfer of ownership. 17 U.S.C. § 106(1), (3).

**A. There is no genuine dispute that Thomas was acting as Plaintiff's authorized agent throughout her involvement with Amazon.**

A copyright owner may himself convey rights of his copyrighted work, or he may appoint a duly authorized agent to transfer such rights. *See* 17 U.S.C. § 204(a). "[A]nyone who is authorized by the copyright owner to use the copyrighted work in a way specified in [17 U.S.C. § 101 *et seq.*] or who makes a fair use of the work is not an infringer of the copyright with respect to such use." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 433 (1984). Additionally, a copyright may be waived by inaction or a particular act, even if waiver was not the intended result. *Veeck v. Southern Bldg. Code Congress Intern., Inc.*, 241 F.3d 398, 409 (5th Cir. 2001).

Amazon correctly asserts that Plaintiff cannot show that any distribution through Amazon was unauthorized. (Doc. No. 50-1, at 9-10). Plaintiff admits in his complaint that Thomas was "assisting him in editing and finding a publisher for marketing." (Doc. No. 1, at 3). Thomas also

is listed as the "Person to Contact for Rights and Permissions" on the "Certificate of Registration"[2] form Plaintiff submitted as an exhibit. (Doc. 23-1, Ex. A, at 1) and as the copyright owner for Plaintiff's book on the United States Copyright Office's Online Public Catalog. (Doc. No. 24, at 5-8). [3] Plaintiff clearly was aware of Thomas's listing on these records, as he admits to it in his pleadings and submitted the document along with his response to Amazon's motion to dismiss. Plaintiff never removed Thomas from either listing. Thus, all the documented evidence shows, and Plaintiff's own admissions confirm, that Thomas was at all times working as Plaintiff's authorized agent.

As Plaintiff's authorized agent, Thomas can transfer the rights of the copyrighted work. She did so through CreateSpace. Because Thomas was an authorized agent, her transfer of any right was permitted by law and no distribution by Amazon was unauthorized.

**B. Plaintiff cannot show that Amazon directly infringed any of his exclusive rights as a matter of law.**

To succeed on a copyright infringement claim, a plaintiff must show that a defendant directly infringed his copyright or committed secondary infringement by contributorily or vicariously infringing upon his copyright. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 511 (4th Cir. 2004). The Fourth Circuit has held that direct infringement requires the defendant take volitional conduct that violates the plaintiff's rights. *Id.* In *CoStar*, the defendant hosted a website that contained real estate listings. *Id.* at 546. The plaintiff, a realty company, sued the defendant

---

[2] The United States Copyright Office issues a Certificate of Registration as a public record of the author and owner of the claimed work and includes the title of the work, the author, the name and address of the copyright owner, the year of creation, etc. *See* Copyright Basics, United States Copyright Office, available at https://www.copyright.gov.

[3] Thomas's last name was formerly Fields, which is the name on listed on the Certificate of Registration and Public Catalog. (Doc. 1, at 1).

for copyright infringement because the website had posted the plaintiff's copyrighted photos. *Id.* The defendant argued that the website was merely a passive conduit—or, in other words, it provided a website that responded automatically to users' input—and therefore, it could not be held liable for direct copyright infringement. *Id.* at 550. The Fourth Circuit agreed, stating, "an [Internet service provider] who owns an electronic facility that responds automatically to users' input is not a direct infringer." *Id.* Rather, some volitional, intervening act is required on the defendant's part for a plaintiff to succeed on a claim for direct infringement. *Id.*; *see also Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. 417, 439-42 (1984) (holding that a manufacturer of copy machines, even if aware that buyers of its machine may use it to engage in copyright infringement, is not strictly liable for infringement); *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2nd Cir. 2008) (holding there was no direct copyright infringement when copies of copyrighted television programs and movies were recorded by a cable company's digital video recorder (DVR) because copies were automatically made upon the customer's demand); *Wolk v. Kodak Imaging Network, Inc.*, 840 F. Supp. 2d 724, 742 (S.D.N.Y. 2012) (holding that lack of evidence of volitional conduct by a company involved in the development of cameras and film, an online photography service, and other related products and services precluded an artist's claim for direct copyright infringement).

Similarly, because CreateSpace is an automated service that allows authors and their authorized agents to publish and distribute their work, Plaintiff cannot succeed as a matter of law on a claim for direct infringement. Amazon provided an automated service and took no part in the content of the work.[4] CreateSpace merely served as a conduit for authors and independent

---

[4] Amazon states the only review of any of the content is a check for pornographic or other offensive images before a self-published book is listed on their website. (Doc. No. 50-2, at ¶ 13).

publishers to self-publish digital and print-on-demand books. (Doc. No. 50-2: Affidavit of Mackenzie Smith, at ¶ 3-14). Other district courts have refused to hold Amazon liable for copyright infringement for their automated services as a matter of law. *See, e.g.*, *Parker v. PayPal, Inc.*, No. 16-4786, 2017 WL 3508759, at *4 (E.D. Pa. Aug. 16, 2017) (dismissing claims against Amazon for copyright infringement because Amazon's "storage of electronic materials on their servers . . . is, by its nature, passive conduct performed automatically at the instigation of others, and does not render [Amazon] liable for any direct copyright infringement"); *Blocker v. Black Entm't Television, LLC*, No. 3:17-CV-01406, 2018 WL 3797568, at *4 (D. Or. June 26, 2018) (dismissing a copyright infringement claim against Amazon because merely giving users access to copyrighted material posted by others is not enough for a copyright infringement claim). Thus, Plaintiff cannot show as a matter of law that Amazon directly infringed his copyright.

**C. Plaintiff cannot show that Amazon indirectly infringed his exclusive rights as a matter of law.**

Plaintiff likewise cannot establish that Amazon indirectly infringed his copyright through contributory or vicarious infringement. While the Copyright Act does not expressly render anyone liable for infringement by a third party, secondary infringement is a common law doctrine allowing a court to find copyright infringement when there is contributory or vicarious infringement. *Sony*, 464 U.S. at 435.

To establish secondary infringement, a plaintiff must show that someone other than the secondary infringer directly infringed on his copyright. Amazon argues that Plaintiff cannot show secondary infringement because as a threshold, Plaintiff cannot establish direct infringement by any party. (Doc. No. 50, at 13). Because Amazon brings this motion for summary judgment, the Court does not decide whether Thomas infringed Plaintiff's copyright in this Order. While it is true that Amazon could not be liable for secondary infringement as a matter of law if Thomas did

8

not infringe on Plaintiff's copyright, Plaintiff still cannot show that Amazon contributorily or vicariously infringed on his copyright even if Thomas was a direct infringer.

To establish contributory infringement, "a plaintiff must show that the defendant (1) provides a product or service incapable of substantial non-infringing uses, or (2) intentionally induces infringement by clear expression or other affirmative steps to foster infringement." *Average Joe's Entm't Grp., LLC v. SoundCloud, LTD.*, No. 3:16-CV-3294, 2018 WL 6582829, at *4 (M.D. Tenn. Oct. 17, 2018) (citing *Grokster, Ltd.*, 545 U.S. at 936-37, 942); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement[.]").

Plaintiff cannot show that CreateSpace was incapable of a substantial non-infringing use. Through CreateSpace, millions of self-published books that did not infringe copyrights were published. (Doc. No. 50-2: Affidavit of Mackenzie Smith, at ¶ 7). In fact, Amazon designed CreateSpace with steps intended to prevent copyright infringement. Amazon required all users to agree to the "CreateSpace Member Agreement," which required that the author or publisher expressly represent that they obtained all rights necessary to distribute the work and that the work does not infringe on any intellectual property rights of others. (Doc. No. 50-2, Affidavit of Mackenzie Smith, at ¶ 9; Doc. No. 50-2: Exhibit A: CreateSpace Member Agreement). Other courts have found similar services to have substantial non-infringing uses. *See Average Joes*, 2018 WL 6582829, at *5 ("[Plaintiff] has recognized that the SoundCloud platform is capable of many non-infringing uses but argues that SoundCloud allows for infringing content to exist and thrive on the platform. The first way to establish contributory infringement under *Grokster* cannot be met if the service is capable of substantial non-infringing uses as it is here."); *Hydentra HLP Int. Ltd. V. Luchian*, No. 1:15-CV-22134, 2016 WL 5951808, at *13 (S.D. Fla. June 2, 2016) ("Plaintiff

9

fails to establish that the Websites are incapable of being used for any purpose other than the dissemination and posting of copyrighted videos."); *Smith v. BarnesandNoble.com, LLC*, 143 F. Supp. 3d 115, 126 (S.D.N.Y. 2015) ("Defendant is a well-known bookseller that sells print and electronic books retail establishments and through its website. To facilitate that, Defendant's digital locker system is used to distribute purchased eBooks and free samples. . . . The digital locker system is capable of substantial non-infringing uses, and those uses are commercially significant.").

Plaintiff cannot show that Amazon intentionally induced or encouraged direct infringement of his copyright. As discussed earlier, Amazon played a passive role in the publication of Plaintiff's book. Simply providing a self-publishing service, especially one that requires users confirm they are not infringing anyone's intellectual property rights before providing the service, does not translate to Amazon intentionally inducing or encouraging Thomas to infringe on Plaintiff's copyright.

The most Plaintiff can point to in support of his contributory infringement claim is an email sent to Amazon stating that while Thomas "was the authorized agent," she was not the owner and had accepted money to which Plaintiff was entitled. (Doc. No. 50-2, at 37). The email requested that Amazon "stop all sells of the materials pending the outcome of this matter." *Id.* There is no signature identifying who sent the email, only the vague email address "goddessstallings@aol.com." Amazon responded to the email requesting the standard categories of information for a Digital Millennium Copyright Act complaint takedown notice. (Doc. No. 50-2, at 5). Such information was never provided to Amazon and Amazon did not take down the book's listing. This correspondence is not enough to show that Amazon contributorily infringed upon Plaintiff's copyright. *See Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007)

("The DMCA notification procedures place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright. We decline to shift a substantial burden from the copyright owner to the provider . . . . Since [plaintiff] did not provide effective notice, knowledge of infringement may not be imputed to [the defendants] based on [plaintiff's] communications."); *Miller v. Facebook, Inc.*, No. C 10-00264, 2010 WL 1292708, at *4 (N.D. Cal. Mar. 31, 2010) (rejecting the plaintiff's argument that the defendant induced and encouraged infringement because it refused to remove a video game from its website).

A plaintiff may prevail on a contributory infringement claim if he shows that (1) "the defendant profits directly from the infringements" and (2) the defendant "has a right and ability to supervise the direct infringer[.]" *Grokster, Ltd.*, 545 U.S. at 930 n.9. "A vicarious infringer exercises control over a direct infringer when he has both a legal right to stop or limit the directly infringing conduct, as well as the practical ability to do so." *Williams v. Gaye*, 885 F.3d 1150, 1177 (9th Cir. 2018) (internal citations omitted).

Plaintiff cannot show that Amazon has the practical ability to supervise the millions of authors and independent publishers who utilize its self-publishing services. *See Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932, 2015 WL 4394673, at *9 (W.D. Wash. July 16, 2015) ("It is undisputed that Amazon lacks the ability to analyze every image it receives from third party sellers, compare the submitted image to all other copyrighted images that exist in the world, and determine whether each submitted image infringes someone's copyright interest. As a result, Amazon lacks the ability to control the infringing activity." (internal quotations omitted)). As Amazon asserts in its brief, "[t]he very nature of self-publishing precludes such supervision." (Doc. No. 50, at 17). And, in this case, even if Amazon had searched for Plaintiff's copyright, all

documents would have suggested that Thomas was his authorized agent and thus, was authorized to distribute the book.

Plaintiff has not shown that there is any genuine dispute of material fact in this case, nor can Plaintiff succeed as a matter of law on his copyright infringement claim. As such, summary judgment in favor of Amazon is appropriate. Since Thomas has made no motion for summary judgment, Plaintiff's claims against Thomas remain intact.

## IV.   ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Defendant's "Motion for Summary Judgment" (Doc. No. 50) is **GRANTED**, and **SUMMARY JUDGMENT** is hereby entered in favor of Defendant Amazon on the claims in this action.

**SO ORDERED**.

Signed: November 27, 2019

Kenneth D. Bell
United States District Judge